UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Master File No. 00-1334-MD-MORENO
Tag-Along Case No. 05-23326-CIV-MORENO/TORRES

IN RE: MANAGED CARE LITIGATION
_____

BLUE SPRINGS INTERNAL
MEDICINE, P.C., et al.,

                 Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
KANSAS CITY, et al.

                 Defendants.
_____/

**REPORT AND RECOMMENDATION ON MOTION TO REMAND**

This matter is before the Court upon Plaintiffs' Motion to Remand and for Costs and Attorney's Fees [D.E. 35], filed on March 12, 2008, and Defendants' Joint Memorandum in Opposition [D.E. 51], filed April 16, 2008. After careful consideration of the motions, response, replies, and relevant authority, and being otherwise fully advised in the premises, Plaintiffs' Motion to Remand should be Denied.

*I.  BACKGROUND*

This action was originally a class action filed by Plaintiffs Dr. Steven Buie and Hickman Mills Clinic, Inc., healthcare providers, in the Circuit Court of Jackson County, Missouri on February 17, 2005, against various insurers, on behalf of all licensed physicians and physician associations practicing in the state of Missouri. The

Amended Complaint [D.E. 34], filed March 12, 2008, asserts nine separate state law claims: quantum meriut, breach of contract, unjust enrichment, violation of Missouri "prompt pay" statutes, inducing to provide less than medically necessary services in violation of a Missouri statute, negligent misrepresentation, fraud, and civil conspiracy.

The overall crux of the Plaintiffs' Complaint is that Defendants systematically deny and delay payments to healthcare providers like them [D.E. 34 at ¶ 63]. Plaintiffs specifically contend that (1) Defendants manipulate coding procedures that provide the basis for physician reimbursement, and fail to pay physicians in accordance with standard coding practice, *id.* at ¶¶ 68-70; (2) Defendants use undisclosed cost-based criteria, rather than medical necessity criteria, to wrongfully deny payment of claims and reduce payments to providers, *id.* at ¶ 64; (3) Defendants engage in systematic downcoding and bundling of claims to manipulate Current Procedural Terminology ("CPT") coding and reduce payments to physicians, and do so through the use of McKesson HBOC or comparable software capable of modifying CPT code protocols, *id.* at ¶¶ 68-70; (4) Defendants use their overwhelming and dominant economic and market power to coerce Plaintiffs into accepting Defendants' policies on a take it or leave it basis, *id.* at ¶ 72; (5) Defendants fail to pay capitation rates for unassigned members, which undermines the actuarial assumptions on which capitated arrangements are purportedly based, *id.* at ¶¶ 78-82; (6) Defendants have routinely charged physicians for hospital services and prescription drugs that their members did not use through misuse of risk pools, *id.* at ¶¶ 83-84; and (7) Defendants have engaged

in a common scheme and conspiracy to advance their fraudulent scheme, *id.* at ¶ 90. Plaintiffs seek actual, punitive and treble damages, attorney's fees and costs, plus injunctive and declaratory relief.

Defendants contend that Plaintiffs' claims are federal claims (implicating Employee Retirement Income Security Act [ERISA], the Racketeer Influenced and Corrupt Organizations Act [RICO], and the Federal Employees Health Benefits Act [FEHBA]) masquerading as state law claims, and therefore removed the action to the United States District Court for the Western District of Missouri on June 9, 2005. Contemporaneously, Defendants requested a ruling by the Judicial Panel on Multidistrict Litigation (JPML) that the claims in this case be transferred to the Southern District of Florida based on identical or common questions pending in the cases consolidated in *In re Managed Care Litig.*, 294 F. Supp. 2d 1259 (S.D. Fla. 2003) (MDL No. 1334). Defendants relied on the lead case in that MDL, *Shane v. Humana, Inc.*, 228 Fed. Appx. 927, 2007 WL 1695735 (11th Cir. 2007), which involved plaintiffs alleging that they were not paid in accordance with standard coding practice, that those defendants intentionally delayed and systematically denied reimbursement claims, that they manipulated CPT codes by downcoding and bundling claims, that the defendants used their overwhelming economic power and market dominance to coerce the plaintiffs and similarly situated parties, that defendants withheld capitation payments for insureds who were enrolled, and that they misrepresented the workings of pharmacy risk pools. *See* No. 00-1334-MD-Moreno, Second Am. Class Action Complaint ¶¶ 75-120.

At the same time that Defendants removed the case to the Missouri federal court, they sought to stay the matter while the JPML decided whether to transfer the case to Florida. The JPML ultimately granted Defendants' request that the case be transferred to this Court for inclusion in the centralized pretrial proceedings then currently underway before Judge Moreno.

Following the transfer, Judge Moreno placed this action in a civil suspense. The case was lifted from civil suspense and reopened on June 14, 2007. Plaintiffs then timely filed their pending Motion to Remand on March 12, 2008. Defendants' Joint Memorandum in Opposition followed on April 16, 2008, and Plaintiffs filed their reply on June 2, 2008.

The matter is thus ripe for disposition. Judge Moreno referred the motion for a Report and Recommendation on August 25, 2008 [D.E. 73].

## II.  ANALYSIS

Plaintiffs argue in their Motion to Remand that Defendants have failed to satisfy their burden of demonstrating the existence of federal jurisdiction over any of Plaintiffs' state law claims. Plaintiffs seek an award of costs and attorney's fees due to Defendants' alleged improvident removal.

On a motion to remand, the removing party has the burden of demonstrating federal subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936). A party who removes a case to federal court pursuant to 28 U.S.C. § 1441 must prove that the federal district court possesses "original jurisdiction" that exists when a plaintiff's claims arise under

the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Removal jurisdiction is construed narrowly with all doubts resolved in favor of remand. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998).

Federal question jurisdiction is also governed by the "well-pleaded complaint" rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 n.7, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). The plaintiff is master of the complaint, and federal question jurisdiction is only proper if the removing party can establish one of the following: (1) a federal claim is asserted on the face of the complaint; (2) under the "artful pleading doctrine," federal claims were wrongly characterized as state law claims; or (3) the state law claim requires the interpretation of federal law. *Rivet v. Regions Bank*, 522 U.S. 470, 475, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998); *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 807-10, 106 S. Ct. 3229, 92 L. Ed. 650 (1986); *Rains v. Criterion Sys. Inc.*, 80 F.3d 339, 343 (9th Cir. 1996). Courts must evaluate the content of the complaint, and not merely review the titles a plaintiff places on his pleadings. *Frey v. Amor Corr. Health Servs.*, 2006 WL 4535802, *1 (S.D. Fla. Mar. 10, 2006); *Rains*, 80 F.3d at 343 n.2 (citing *Johnson v. United States*, 547 F.2d 688, 691 (D.C. Cir. 1976)).

### A.  *ERISA Preemption*

There is, however, an exception to the "well-pleaded complaint" rule: Congress may "preempt[] an area of law so completely that any complaint raising claims in that area is necessarily federal in character and therefore necessarily presents a basis for federal jurisdiction." *Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997). This doctrine of complete preemption serves as an exception to the "well-

pleaded complaint" rule and permits a defendant to remove a case to federal court even when only state law claims are alleged in the complaint. *Id*. ERISA's complete preemption arises from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. § 1132 for loss or denial of employee benefits. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir. 1999). Pursuant to 29 U.S.C. § 1132(a), ERISA is the exclusive cause of action for the recovery of benefits under an ERISA plan. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-67, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987). "Therefore . . . if a state law claim is in fact properly one that arises under ERISA's enforcement provisions, *e.g.,* a claim for benefits, ERISA complete preemption should apply." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1289 (S.D. Fla. 2003).

Here, Defendants contend that Plaintiffs' various state law claims are completely preempted by section 502(a) of ERISA. In order for state law claims to be subject to ERISA complete preemption, four elements must be present: (1) a relevant ERISA "plan"; (2) the plaintiff must have standing to sue; (3) the defendant must be an ERISA entity; and (4) the complaint must seek relief akin to what is available under 29 U.S.C. § 1132(a). *Butero*, 174 F.3d at 1212. Section 502(a)(1)(B) provides that an ERISA plan "participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Defendants argue that Plaintiffs' claims are completely preempted by section 502(a) because they are pursuing claims based on assignments of benefits from their patients and therefore are seeking to impose an alternative enforcement mechanism for benefits that are created

by ERISA plans. Defendants argue that ERISA's "carefully integrated" civil enforcement provisions squarely foreclose these alternative enforcement mechanisms. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987).

By its very terms, section 502(a) provides for preemption only in suits for benefits among ERISA entities. *See id.* at 54 ("the policy choices reflected in the inclusion of certain remedies and the exclusion of others would be completely undermined if *ERISA-plan participants and beneficiaries* were free to obtain remedies under state law that Congress rejected in ERISA") (emphasis added). Part of this dispute, therefore, boils down to whether the Provider Plaintiffs are considered "ERISA entities" who have standing to pursue an ERISA claim for benefits. The only parties with standing to sue under ERISA are those listed in the civil enforcement provision of ERISA, codified at 29 U.S.C. § 1132(a).[1] Under 29 U.S.C. § 1132(a)(1)(B), a plaintiff must be either a "participant" or a "beneficiary" (or, for relief under 29 U.S.C. § 1132(a)(3), a "fiduciary") of the ERISA plan in order to have standing. *See, e.g., Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001).

Generally, healthcare providers like the Plaintiffs in this case lack independent standing under ERISA's statutory scheme because they are not ordinarily considered

---

[1] The civil enforcement provision states in pertinent part:
(a) Persons empowered to bring a civil action
A civil action may be brought –
(1) by a participant or beneficiary –
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

"beneficiaries" or "participants." *See Cagle v. Bruner*, 112 F.3d 1510, 1514 (11th Cir. 1997), *reh'g en banc denied*, 124 F.3d 223 (11th Cir. 1997). However, when they receive assignments of benefits from beneficiaries or participants of an ERISA plan, they can acquire derivative standing. *Id.* Therefore, whether complete preemption applies is largely a function of whether an existing assignment entitles the provider to have standing under ERISA, or whether the provider can 'step into the shoes' of a participant beneficiary. *In re Managed Care Litig.*, 298 F. Supp. 2d at 1290.

Because the providers in our case lack an express contractual relationship with Defendants, they are, by definition, non-participating providers. *In re Managed Care Litig.*, 298 F. Supp. 2d at 1290.[2] There are two distinct subclasses of non-participating providers lacking a contractual relationship: those with assignments from participants or beneficiaries (Provider Assignees) and those without them. *Id.* Defendants contend the Plaintiffs'/Provider-Assignees' claims are subject to complete preemption under section 502(a) because, whatever their characterization, they are in reality claims for ERISA plan benefits made by doctors rendered outside of a contractual relationship

---

[2] Plaintiffs' reliance on *In re Managed Care Litig.*, 298 F. Supp. 2d at 1290 (in support of their argument that their claims are not affected by ERISA preemption because they are suing under quasi contract claims) is misplaced. In that case, Judge Moreno held that "physicians' claims for breach of contract 'cannot be affected by this species of ERISA's preemptive force if they are merely filing suit for payment under the terms of their independent contracts.'" [D.E. 32 at 16]. Those Plaintiffs to whom Judge Moreno was referring, however, were "Plaintiffs with express fee-for-service contracts." Because those plaintiffs' suits arose *under the terms* of their independent contracts (i.e., their claims invoked express contract violations), the Court found that they were clearly not pursuing claims as "participants" or "beneficiaries" of an ERISA plan. Here, however, Plaintiffs have taken that statement out of context. They are not suing *under the terms* of **any** express fee-for-service contract with Defendants and, as the analysis to follow demonstrates, it is clear that Plaintiffs are raising (at least some of) their claims as "participants" or "beneficiaries" (unlike the Plaintiffs to whom Judge Moreno was referring).

with the insurer.[3] Defendants assert that such claims can only be brought on the basis of an assignment of the patients' rights.

After careful consideration, we agree that Plaintiffs are indeed participants or beneficiaries who have standing under ERISA and that they are attempting to recover benefits due under the terms of an ERISA plan. As the Plaintiffs possess assignments from plan beneficiaries,[4] they clearly possess derivative standing under controlling Eleventh Circuit precedent. *See Cagle*, 112 F.3d 1510 (holding that healthcare provider had derivative standing to bring an action against an ERISA plan insurance fund where the record showed that the provider had been assigned the right to payment of medical benefits); *see also HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982 (11th Cir. 2001).

The first three requirements for complete preemption have thus been met. Turning then to the fourth element of complete preemption, Defendants maintain that

---

[3] Because several of Plaintiffs' claims will require an examination of/reference to specific plans, Plaintiffs' assertion that their claims are "not related" to any ERISA plans is simply untenable. Plaintiffs lack privity with Defendants. Plaintiffs provided medical services to patients who, in essence, when asked for payment, directed Plaintiffs to Defendants. Defendants provided the payment that they believed to be sufficient. Plaintiffs' only conceivable action, if they feel short-changed, is against the patients. The patients, possessing insurance plans, have directed Plaintiffs, through assignments of rights under their plans, to seek the balance owed for their medical treatments from Defendants directly. In other words, but for the ERISA plans, several of Plaintiffs' claims would never materialize.

[4] *See* Exhibits "A," "B," and "C" attached to D.E. 51. Contrary to Plaintiffs' assertion, ERISA complete preemption doctrine is an exception to the "well-pleaded" complaint rule, thus courts must *independently* analyze whether preemption applies. *See, e.g., Tidwell v. Coldwater Covers, Inc.*, 393 F. Supp. 2d 1257, 1261 (N.D. Ala. 2005). Therefore, the "court is not bound by the four corners of Plaintiffs' complaint, and may look elsewhere to clarify whether Plaintiffs' claim encompasses an action within federal jurisdiction." *Kilmer v. Central Counties Bank*, 623 F. Supp. 994, 1000 (W.D. Pa. 1985).

it is beyond dispute that Plaintiffs are attempting to collect unpaid benefits due under a plan because there is no independent contract that entitles them to payment for services. We also reach the same conclusion.

In possessing an assignment, the Plaintiffs/Provider-Assignees hold a right to collect such unpaid benefits. Virtually every court to consider this question has held that "*reimbursement* and related claims involving services provided to ERISA beneficiaries on a *non-participating basis* may be pursued only through ERISA's civil enforcement provision." *In re Managed Care Litig.*, 298 F. Supp. 2d at 1291; *see also, e.g., Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir. 1988) (holding non-participating provider's state law claims for breach of fiduciary duty, breach of contract, negligence, equitable estoppel, and fraud preempted, and limiting provider to ERISA remedy); *see also Cagle*, 112 F.3d at 1515 (it is the assignment by a physician of the right to be "paid for [the assignor-patient's bills]" that triggers the providers' assignee-standing under ERISA section 502(a)). It is clear in our case that Plaintiffs seek "*reimbursement … involving services provided to ERISA beneficiaries on a non-participating basis*"[5] and thus must pursue their claims through

---

[5] Paragraph (k) of Plaintiffs' prayer for relief (seeking an order "prohibiting the payment of *reimbursement* by Defendants which is not adequate to cover the costs of delivering *health care services* Defendants have promised Defendants' members.") [D.E. 34 at 29] (emphasis added), in conjunction with paragraph A of the same prayer (seeking "[a]n award of *compensatory or actual damages* in the amount in which Plaintiffs . . . have been injured") [D.E. 34 at 31] (emphasis added) clearly raises a claim for "*reimbursement . . . involving services provided to ERISA beneficiaries.*" Plaintiffs' statement in paragraph 101 of the Complaint that "Plaintiffs and class members, have provided medical services to patients insured by Defendants of Defendants' health plans, *without entering a written contractual relationship* with Defendants" [D.E. 34 at 21] (emphasis added) clearly demonstrates that Plaintiffs are involved "*on a non-participating basis.*"

ERISA's civil enforcement provision. Furthermore, even a cursory look at the Plaintiffs' Complaint shows that the relief sought is "akin to what is available" under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).[6]

In conclusion, to the extent that Plaintiffs seek compensation for services provided to Defendants' insureds, if that compensation can be calculated without reference to any specific insurance plans, Plaintiffs' claims would not necessarily be preempted. But if, in calculating that compensation, this Court must make reference to specific insurance plans (i.e., determine how much is owed under each specific policy), then we would necessarily be interpreting the terms of ERISA (and other federal) insurance plans. Because, in their prayer for relief [D.E. 34 at 31, ¶ A], Plaintiffs seek "[a]n award of compensatory or actual damages in the amount in which Plaintiffs have been injured…," this Court will necessarily have to look at each insurance policy under every plan (federal or otherwise) under which Plaintiffs have

---

[6] A few examples will suffice. Plaintiffs' request in paragraph (k) of their prayer for relief [D.E. 34 at 29] asks for an order "prohibiting the payment of reimbursement by Defendants which is not adequate to cover the costs of delivering the health care services *Defendants have promised Defendants' members*" (emphasis added). Since determining what "Defendants have promised Defendants' members" necessarily requires reference to applicable insurance plans, the prayer is certainly akin to one "to recover benefits due . . . under the terms of [the] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Likewise, their prayer in paragraph (m) requesting an order "prohibiting the failure or refusal of Defendants to provide additional payments to Plaintiffs for unanticipated costs and expenses which arise after a contract with the physicians . . . has been executed, which relate to medically necessary expenses the patient requires the Defendants' members require [sic], including . . ." neatly fits into 29 U.S.C. § 1132(a)(1)(B). Finally, their prayer in paragraph (n) requesting an order "prohibiting the failure or refusal of Defendants to disclose the scope of all services to be provided under the contract with the physicians . . . the amount of the payment by Defendants to physicians . . . for such services, and the failure or refusal of Defendants to provide full disclosure of Defendants' methodology for determining payment for a health care service" fits neatly into either 1132(a)(1)(B) or (a)(3).

provided medical services to Defendants' insureds in order to determine the exact amount in which "Plaintiffs have been injured." Furthermore, contrary to Plaintiffs' representations in their reply that their claims "do not concern how much coverage a patient has, the terms of such coverage, or the benefits available to an insured," [D.E. 66 at 6], and despite their claim that "the heart of the dispute lies . . . not [in] whether a right to payment exists under any defendant insurers' benefit plan," [D.E. 66 at 8], their prayer for an order "prohibiting the failure or refusal of Defendants to provide *additional* payments to Plaintiff for unanticipated costs and expenses which arise after a contract . . . has been executed . . .," [D.E. 34 at 29] (emphasis added), certainly seems to "concern . . . the terms of [the] coverage," "the benefits available to [the] insured," or "whether a right to payment exists," and certainly requires reference to individual (some federal) plans. Because the potential benefits calculated from these assessments would accrue to Plaintiffs (at a minimum, with respect to the three ERISA assignments they received), the standing requirements are satisfied and jurisdiction in this Court is proper.[7]

This Court therefore finds that Plaintiffs, as Provider-Assignees, possess derivative standing and thus many of their claims should be recast, under the doctrine of complete preemption, as ERISA claims for benefits under section 502(a). Certainly, this determination applies, at a minimum, to Counts II (Claim for Breach of Contract), III (Claim for Unjust Enrichment), and VIII (Claim for Negligent Misrepresentation)

---

[7] Whether the benefits assessed absent an assignment accrue directly to Plaintiffs or instead to the policyholders is beyond the scope of our inquiry. That Plaintiffs possess at least three assignments for these benefits under an ERISA plan is sufficient to demonstrate proper standing for our purposes. Plaintiffs' contrary unsupported argument is not persuasive.

because they will necessarily require reference to applicable plans to which Plaintiffs' possess assignments.[8]  Accordingly, this statute constitutes their exclusive avenue for enforcing claims for ERISA benefits.  29 U.S.C. § 1132(a)(1)(B).

### B. *Supplemental Jurisdiction*

In their Memorandum in Opposition, Defendants argue that this Court should retain supplemental jurisdiction over Plaintiffs' remaining state law claims (1) because we have original jurisdiction under ERISA, and (2) because doing so would further the interests of judicial efficiency, comity, and uniformity of rulings.  Plaintiffs argue in their Reply that this Court should not exercise supplemental jurisdiction (1) because this Court lacks original jurisdiction and, (2) in light of that, the Court's extensive history on the subject matter via the MDL case is not a legitimate jurisdictional basis by itself.  Plaintiffs offer no reason as to why we should not exercise supplemental jurisdiction in the event that we find original jurisdiction does exist.  Because we find that original jurisdiction does in fact exist, and are met with no arguments as to why we should not exercise supplemental jurisdiction in that event, we assume for purposes of a motion to remand that we could hear all of Plaintiffs' claims in this Court.  Nor must we determine at this time exactly which of Plaintiffs claims are subject to original jurisdiction and which are subject to supplemental jurisdiction, as this is a topic that the Court may likely have to address in subsequent proceedings.

---

[8]  *E.g.,* paragraph 106 (claiming that "Defendants have breached their obligation to pay Plaintiffs . . . for medically necessary services in accordance with their contractual obligations") will require reference to applicable plans to determine what the "medically necessary services" Defendants are obligated to pay precisely are.

### *III.   CONCLUSION*

Based on the foregoing, the undersigned Magistrate Judge recommends that Plaintiffs' Motion to Remand [D.E. 35] be **DENIED** in its entirety.  The case should not be remanded and the demand for attorneys' fees or costs should be rejected as moot.

Pursuant to Local Magistrate Rule 4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 8th day of December, 2008.

    */s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge