## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Master File No. 00-1334-MD-MORENO
Tag-Along Case No. 05-23326-CIV-MORENO/TORRES

IN RE: MANAGED CARE LITIGATION

———————————————————————,

BLUE SPRINGS INTERNAL
MEDICINE, P.C., *et al.*,

        Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD
OF KANSAS CITY, *et al.*

        Defendants.

———————————————————————/

## REPORT AND RECOMMENDATION ON MOTION TO COMPEL ARBITRATION

This matter is before the Court upon Defendants,' Blue Cross & Blue Shield of Kansas City and Good Health HMO, Inc., Motion to Compel Arbitration [D.E. 49], filed April 16, 2008, and Plaintiffs' Memorandum in Opposition [D.E. 60], filed May 15, 2008. After careful consideration of the motion, response, reply, relevant authority, and being otherwise fully advised in the premises, Defendants' Motion to Compel Arbitration should be Granted.

### I. BACKGROUND

This action was originally a class action filed by Plaintiffs Steven Buie, M.D., a healthcare provider, and Hickman Mills Clinic in the Circuit Court of Jackson County, Missouri on February 17, 2005, against various insurers, on behalf of all

licensed physicians and physician associations practicing in the State of Missouri. The complaint asserted five separate state law claims: quantum meruit, breach of contract, unjust enrichment, violation of Missouri "prompt pay" statutes, and violation of Mo. Rev. Stat. § 354.606. Plaintiffs amended their complaint on March 2, 2005 to include three additional state law claims of (1) negligent misrepresentation, (2) fraud, and (3) civil conspiracy.

Contending that Plaintiffs' claims were in reality federal claims (implicating ERISA, FEHBA, and RICO violations) masquerading as state law claims, Defendants removed the action to the United States District Court for the Western District of Missouri on June 9, 2005. Contemporaneously, Defendants requested a ruling by the Judicial Panel on Multidistrict Litigation (JPML) that the claims be transferred to the Southern District of Florida based on identical or common questions pending in the cases consolidated in *In re Managed Care Litig.*, 294 F. Supp. 2d 1259 (S.D. Fla. 2003) (MDL No. 1334). Defendants sought to stay the matter while the JPML decided whether to transfer the case to Florida. The JPML ultimately granted Defendants' request that the case be transferred to this Court for inclusion in the centralized pretrial proceedings then currently underway before Judge Federico Moreno. The case was transferred to this Court on October 20, 2005.

Following transfer, Judge Moreno placed this action in the civil suspense file on January 5, 2006, with leave to restore it to the active docket upon a party's motion. After status hearings held in 2006 and 2007, the case was lifted from civil

suspense and reopened on June 14, 2007.[1]  On October 15, 2007, Judge Moreno entered an Order to Show Cause Regarding All MDL Tag-Along Actions.  Pursuant to that Order, these moving Defendants re-filed[2] their Motion to Compel Arbitration and to Dismiss or Stay Proceedings Pending Arbitration on November 9, 2007.  On February 19, 2008, Judge Moreno issued an Order denying all pending motions with leave to re-file in cases that participated in the February 12, 2008 status conference.  Plaintiffs filed their Amended Complaint on March 12, 2008.  Defendants then timely filed their pending Motion to Compel Arbitration on April 16, 2008.  Plaintiffs' Response and Memorandum in Opposition followed on May 15, 2008, and Defendants filed their Reply on June 2, 2008.

This matter is thus ripe for disposition.  Judge Moreno referred the motion to the undersigned for a Report and Recommendation.  [D.E. 73].

---

[1]     Simultaneously, Judge Moreno granted Plaintiffs Buie and Hickman Mill's Motion to Substitute Class Representative Plaintiffs, to Amend Complaint by Interlineation, and Partial Motion to Dismiss with Prejudice, seeking to substitute the following new class representatives in place of the original class representatives:  Blue Springs Internal Medicine, P.C.; Carandolet Orthopaedic Surgeons, P.A.; Cockerell & McIntosh Pediatrics, P.C.; Consultants in Gastroenterology; Dickson-Diveley Midwest Orthopaedic Clinic, Inc.; Drisko Fee & Parkins, P.C.; Head and Neck Surgery of Kansas City; Kansas City OB-GYN Physicians, P.C.; Kansas City Urology Care, P.A.; Midwest Neurosurgery Associates, P.A.; Northland General Surgery, P.C.; Rockhill Orthopaedics, P.C.; Specialty Physician's Alliance. L.L.C.; and The Doctor's Office of Kansas City, L.L.C., d/b/a/ Soper Medical Group.

[2]     Defendants' original Motion to Compel Arbitration was filed on August 12, 2005 in the United States District Court for the Western District of Missouri.

## II.  ANALYSIS

### A.    *The Agreements*

Defendants base their Motion to Compel Arbitration on Physician Participation Agreements, Physician Network Agreements, Physician Group Participation Agreements, and Physician Group Network Agreements they entered into with Plaintiffs between 1998 and 2001.  These agreements set forth the terms for the repayment of fees and reimbursement by Defendants to Plaintiffs for medical services provided.  The Physician Participation Agreements,[3] (hereinafter "Agreements") in pertinent part, state:

> 9.6   Resolution of Contractual Disputes.  In the event of a dispute between BCBSKC[4] and Physician, the parties agree that they shall abide by the procedures, processes and remedies set forth in this Agreement or otherwise established by BCBSKC for disputes of that type.  Any and all disputes between Physician and BCBSKC shall be conducted between such parties and shall at no time involve Covered Individuals unless and until the parties agree that such involvement is necessary to the resolution of the dispute.   If, following complete exhaustion of such procedures and processes, the dispute remains unresolved, the parties agree that they shall engage in binding arbitration in lieu of pursuing a remedy in any court of law or equity.  The parties agree on the following procedures and limitations of the arbitration process:
>
> > 9.6.1. The party invoking the right to arbitration shall, no less than thirty   (30) days prior to commencing arbitration proceedings, give written notice to the other party of the precise nature of the dispute.  If the dispute remains unresolved, *and if the dispute does not involve an allegation of medical malpractice or professional negligence of a party*, it shall be submitted to binding arbitration in accordance with the rules of the American Arbitration Association or other national ADR association

---

[3]   The Provisions in the Physician Network Agreements and the Group Agreements are nearly identical.  The few differences that do exist have no effect on the resolution of the matter before the Court.

[4]   Blue Cross and Blue Shield of Kansas City.

acceptable to BCBSKC. In no event may arbitration be initiated more than one year following the sending of written notice of the dispute.

9.6.2. Any arbitration proceeding under this Agreement shall be conducted in Kansas City, Missouri before three arbitrators. Each party may select one arbitrator from an approved list provided by the association. The two arbitrators so chosen shall select a third arbitrator, who shall be an individual knowledgeable about the health care industry.

. . .

9.6.4. The arbitrators are not authorized to award consequential, special, punitive or exemplary damages. The arbitrators may, in their discretion, award some or all of the reasonable and actual expenses of arbitration, including witness and attorney's fees, to the prevailing party. The parties shall share equally the expenses of arbitration, except as otherwise ordered by the arbitrator(s).

*See* Blue Cross and Blue Shield of Kansas City Physician Participation Agreement ("Participation Agreement") at 20-21 [D.E. 50-3] (emphasis in original). In addition, the following provision, in bold caps, is stated at the end of the Agreements just above the signature line: **THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.** *Id.* at 24.

The overall crux of the Plaintiffs' Complaint is that Defendants systematically deny, delay, and diminish payments to healthcare providers like them. The broad scope of the arbitration agreement undoubtedly encompasses Plaintiffs' claims, as it mandates binding arbitration for "[a]ny and all disputes" between the parties. Plaintiffs do not deny that their claims fall within the scope of the arbitration agreements, but instead argue that the provisions are unenforceable

because they are unconscionable under the agreed-upon law that governs the agreement, Missouri law.  Defendants do not challenge the application of Missouri contract principles to this issue, but conclude that Plaintiff's unconscionability argument fails.

### B.   *Unconscionability*

There is no dispute that a court of law may refuse to enforce an unconscionable agreement.  *See, e.g., U.S. v. Bethlehem Steel Corp.*, 315 U.S. 289 (1942) (refusing to enforce a loan agreement where the defendant demanded an "exorbitant sum in consideration for his services in procuring a loan"); *State ex rel. Vincent v. Schneider*, 194 S.W. 3d 853, 858 (Mo. 2006) ("An unconscionable contract or clause of a contract will not be enforced.").  Likewise, arbitration provisions may be found unconscionable.  *See, e.g., Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 555-56 (1995) ("[A]n arbitration clause may be invalid . . . if, for example, it is procured through fraud or forgery; there is a mutual mistake or impossibility; the provision is unconscionable . . . ."); *Whitney v. Alltell Comms., Inc.*, 173 S.W. 3d 300, 310 (Mo. Ct. App. 2005) ([A]n arbitration agreement may be invalidated on the basis of such contract defenses as fraud, duress, or unconscionability.").

It is the burden of the party challenging a facially valid arbitration agreement to demonstrate that the agreement is in fact unconscionable.  *In re Managed Care Litig.*, 132 F. Supp. 2d 989, 1000 (S.D. Fla. 2000) (plaintiffs must establish unconscionability); *Reeves v. Chase Bank, USA, NA*, No. 4:07CV1101 HEA, 2008 WL 2783231, at *4 (E.D. Mo. July 15, 2008) (same).  Plaintiffs rely on a

Missouri appellate decision, *Whitney,* to demonstrate that the arbitration agreements are both procedurally and substantively unconscionable. Specifically, Plaintiffs contend that the agreements are unconscionable because (1) they are offered to Plaintiffs on a "take-it-or-leave-it" basis, (2) they use printed form or boilerplate language drawn skillfully by the party in the strongest economic position, (3) they are conspicuously hidden in the document, (4) there exists an inequality of bargaining power between the parties, (5) they give the arbitrator the discretion to award arbitration expenses to the prevailing party, and (6) they preclude the recovery of certain types of damages. Each of these contentions will be addressed in turn.

1. *Enforcing Arbitration Provisions: Sophisticated Party vs. The Average Consumer*

We agree with Defendants that Plaintiffs' reliance on *Whitney* and its progeny in support of their argument that the provisions are unconscionable is misplaced. *Whitney* involved a consumer challenging an arbitration provision located in a wireless telephone contract. This and other courts, when considering the conscionability of contract provisions, have consistently noted a distinction between the average consumer and more sophisticated contracting parties. In ruling on a similar issue, Judge Moreno previously found that "doctors are sophisticated individuals, not consumers," and found "the relationship between sophisticated groups of doctors and managed care companies, where the doctors contract to provide health care to large groups of patients, quite distinguishable" from the "small consumer" context. *In re Managed Care Litig.*, 132 F. Supp. 2d at 998; *see also Randolph v. Green Tree Fin. Corp. - Alabama*, 178 F.3d 1149, 1159

(11th Cir. 1999) (distinguishing arbitration agreements entered into in the small consumer transaction/employment agreement context from those in the commercial franchise agreement "sophisticated party" context).

Because courts distinguish between an average consumer and more sophisticated parties when determining whether an arbitration agreement should be enforced, we initially view the Plaintiffs' claims with some skepticism.  That is not to say that a physician's signature acquiescing to arbitration is dispositive of the matter simply because he is a "sophisticated party," but absent clear and convincing evidence that the agreements are unconscionable (and in light of federal law's preference for enforcement of valid arbitration agreements[5]), we are compelled to enforce them.

### 2. *Procedural Unconscionability*

Plaintiffs' first argument that the arbitration agreements are unconscionable, because they are offered to Plaintiffs on a "take-it-or-leave-it" basis, fails.  Plaintiffs have not offered any evidence that they opposed the provision before the commencement of proceedings, that they attempted to negotiate for the omission of that provision, or that Defendants refused to consider an alternative to the existing provision.  Even if we were to concede that the arbitration provisions were offered on a "take-it-or-leave-it" basis, Plaintiffs did not show *any* desire or inclination to "leave it."  In fact, the first showing of dissatisfaction with the provision did not

---

[5]       *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (The goal of the Federal Arbitration Act is to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.")

arise until the rather opportune moment for the filing of motions with this Court came to bear.  Furthermore, Courts that have invalidated provisions of a contract because they were offered on a "take-it-or-leave-it" basis have done so only because "the adhering party . . . enter[ed] into [the contract] without manifesting knowing and voluntary consent to all [its] terms."  *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 600 (1991).  Furthermore, Plaintiffs here have not offered any evidence showing that their consent to the arbitration provision was not "knowing and voluntary."[6]

Likewise, Plaintiffs' second unconscionability argument, that Defendants use printed form or boilerplate language drawn skillfully by the party in the strongest economic position, fails as well.  Courts around the country have recognized that the need for pre-printed form contracts is a stark reality of today's mass-production/consumer culture.  *See, e.g., Swain v. Auto Servs., Inc.*, 128 S.W. 3d 103, 107 (Mo. Ct. App. 2003) ("Because the bulk of contracts signed in this country are form contracts . . . any rule automatically invalidating adhesion contracts would be completely unworkable."); *Vincent*, 194 S.W. 3d at 857 (same).[7]  Despite even severe

---

      [6]     Given that the contracts contain an arbitration notice in bold and all caps just above the signature line, and the fact that Plaintiffs - as sophisticated, practicing physicians - have undoubtedly dealt with numerous contracts that contain binding arbitration agreements, we are compelled to find, absent evidence to the contrary, that Plaintiffs' consent to the arbitration provision was, in fact, knowing and voluntary.

      [7]     *See also In re Knepp*, 229 B.R. 821, 838 (Bankr. N.D. Ala. 1999) ([C]ontracts containing these provisions appear with increasing frequency in today's marketplace."); *Southwest Pet Prods., Inc. v. Koch Inds., Inc.*, 107 F. Supp. 2d 1108, 1114 (D. Ariz. 2000) ("Standardized contracts are a reality of today's business arena and a necessary component of the fast-paced world of commerce.  It is not the place of the judicial system to rewrite contract terms for *sophisticated business entities caught unaware by unfavorable provisions that they failed to read and negotiate*.") (emphasis added); *Goodwin v. Ford Motor Credit Co.*, 970 F. Supp. 1007, 1015 (M.D. Ala. 1997)

disparities in bargaining power, these agreements are most often enforced, at least as long as they comport with the reasonable expectations of the parties.  *See, e.g., Greenpoint Credit, L.L.C. v. Reynolds*, 151 S.W. 3d 868, 874-75 (Mo. Ct. App. 2004) (despite disparate bargaining power, pre-printed form contracts are enforceable as long as an "average member of the public who accepts [such a contract] would reasonably expect disputes involving whether either party was in default under its terms to be subject to arbitration rather than litigation."); *Swain*, 128 S.W. 3d at 107 ("[A]n average person would reasonably expect that disputes arising out of an arrangement like this might have to be resolved in arbitration.") A contrary rule would slow commerce to a crawl.

Plaintiffs' third claim of procedural unconscionability, that the arbitration provisions should be invalidated because they are conspicuously hidden in the document, requires little attention.  Plaintiffs claim that "[n]one of the provisions highlight or otherwise attempt to call the signing physician's 'attention to their waiver' of certain rights through bold letters, underlining, or any other device *in the actual arbitration clause of the contract*."   *See* Plaintiffs' Memorandum in Opposition at 10 [D.E. 60] (emphasis added).   While it may be true that the Agreements do not contain such emphasis in the actual arbitration clauses, such omission is inapposite.  As mentioned above, an arbitration notice was included just above the signature line in bold and all caps.  Plaintiffs' claim that the provision is conspicuously hidden is belied by the fact it was placed in one of the most

("[The] standardization of forms for contracts is a rational and economically efficient response to the rapidity of market transactions and the high costs of negotiations . . . .").

conspicuous spots on the Agreement.  *See Purell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, 59 S.W. 3d 505 (Mo. 2001) ("The liability limitation here does not violate public policy, because it is clear, unambiguous, unmistakable, *and conspicuously located directly above the signature line*.") (emphasis added); *Funding Sys. Corp. v. King Louie Int'l, Inc.*, 597 S.W. 2d 624 (Mo. Ct. App. 1979) ("There can be no claim of surprise on the part of King Louie in light of the very prominent and conspicuous nature of the written disclaimer on the face of the lease agreement.").[8]

Plaintiffs' final argument of procedural unconscionability, that the provisions should not be enforced because there exists an inequality of bargaining power between the parties, also lacks merit.  In order for a court to rescind an agreement based on a claim of unconscionability due to an inequality in bargaining power, the moving party must demonstrate that, due to its diminished bargaining power, it had no choice but to sign the agreement (i.e., that they were unable to contract with other health insurance companies).  *See, e.g., Robin v. Blue Cross Hosp. Servs., Inc.*, 637 S.W. 2d 695, 697 (Mo. 1982) (refusing to rescind health insurance contract where "there are literally hundreds of health insurance plans available to the consumer [and t]here is no evidence that appellant was unable to contract individually for medical care protection"); *Gilmer*, 500 U.S. at 33 (refusing to rescind arbitration clause of contract where "[t]here is no indication . . . that

---

[8]    Though we have already declared our position that cases involving claims of unconscionability made in the regular consumer context (as opposed to the sophisticated party context) are inapposite to the case at bar, even these cases demonstrate that courts regularly bind  unsophisticated parties to "hard-to-miss" arbitration provisions.  Recognizing that Plaintiffs here are sophisticated parties, they will not be held to a lower standard than unsophisticated parties.

[Plaintiff], an experienced businessman, was coerced or defrauded into agreeing to the arbitration clause"); *Finnie v. H&R Block Fin. Advisors, Inc.*, No. 07-429-CV-W-NKL, 2007 WL 2908756, at *3 (W.D. Mo. Oct. 7, 2007) (refusing to rescind arbitration provision of employment contract, despite inequality in bargaining power,  where Plaintiff "was put on notice of the arbitration provision before she accepted employment [and] so the obligation was not unexpected" where Plaintiff presented no evidence that she was without any other meaningful option, and where there was no evidence "that she even tried to eliminate the arbitration provision" before signing), *rev'd on other grounds*, No. 07-3526, 2009 WL 56971 (8th Cir. Jan. 12, 2009).

Plaintiffs here broadly assert "Defendant BCBSKC controls a considerable amount of the local health insurance market.  Unequal bargaining power is manifest." However, Plaintiffs offer no evidence to verify these claims.[9]  They have failed to establish that their bargaining power is unequal to Defendants', or that they had no choice but to sign the agreement.

In short, Plaintiffs' argument for avoiding their agreement to arbitrate based on procedural unconscionability is rejected.

---

[9]     The only evidence of "manifest unequal bargaining power" offered by Plaintiffs relates to United Healthcare, a non-party to the present motion.  Further, Plaintiffs ask us to take judicial notice of the fact that Defendant United is "an extremely large enterprise."  Plaintiffs, however, fail to explain the nexus between an insurance provider's successful yearly earnings and a healthcare provider's inability to deal fairly with that insurance provider.  If we were to find, as Plaintiffs would have us do, that a contract between an insurance provider and a Physician's Group is unconscionable simply because the former commands billions of dollars a year in net earnings and the latter has fewer than ten members, the health insurance industry would grind to a halt.

### 3.  Substantive Unconscionability

Plaintiffs then challenge the arbitration provisions as unenforceable because they give the arbitrator the discretion to award arbitration expenses to the prevailing party has no merit.  Plaintiffs offer no reason as to why such an expense-granting provision is unconscionable, nor do they cite to a single authority that supports this position.  Furthermore, Plaintiffs have not demonstrated that they are likely to incur the costs of arbitration or that they would be unable to pay the costs of arbitration, should they be awarded to Defendant.  *Green Tree Fin. Corp. - Alabama v. Randolph*, 531 U.S. at 92 ("[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."); *Sprague v. Household Intern.*, 473 F. Supp. 2d 966, 975 (W.D. Mo. 2005) ("The burden of showing that arbitrator's fees will be cost-prohibitive falls on the party seeking to avoid arbitration . . . .  [T]he party seeking to avoid arbitration must show more than just a hypothetical inability to pay . . . . [It] should present specific evidence of likely arbitrators' fees and its financial [in]ability to pay those fees . . . .") (internal citations and marks omitted).

Absent record evidence "specific to the circumstances indicat[ing] that fees are cost-prohibitive and [will therefore] preclude the vindication of statutory rights in an arbitral forum," *id.*, this Court (and others) have consistently upheld such clauses in arbitration agreements.  *Id.*; *see also In re Managed Care Litig.*, 132 F. Supp. 2d at 1002 (enforcing arbitration provision that provided that "[c]osts are split between the parties, unless assessed differently by an arbitrator"); *E.E.O.C. v.*

*Woodmen of World Life Ins. Soc.*, 479 F. 3d 561 (8th Cir. 2007) (upholding fee-sharing provision of arbitration agreement, despite Plaintiff's current inability to afford arbitration costs, where circumstances at the time of signing were such that a fee-sharing arrangement was not fundamentally unfair).[10]  This case does not merit a different conclusion.

Second, Plaintiffs' contention that the provisions are unenforceable because they preclude the recovery of certain types of damages fails as well.  As Defendants have aptly pointed out, this Court has previously addressed this exact issue in *In re Managed Care Litig.*, No. 00-MD-1334, 2003 WL 22410373 (S.D. Fla. Sept. 15, 2003), where Judge Moreno determined that all state law causes of action "that stem from contractual relationships subject to arbitration must be arbitrated, *notwithstanding any clauses limiting availability of punitive, exemplary, or extra-contractual damages.*  It is for the arbitrator to decide in the first instance whether any applicable provisions improperly limit the availability of . . . damages."  *Id.* at *4 (emphasis added).  *See also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) ("Arbitration under the [Federal Arbitration] Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.  Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that

---

[10]     *See also Quinn v. EMC Corp.*, 109 F. Supp. 2d 681, 685 (S.D. Tex. 2000) ("The mere possibility that a plaintiff may have to share in the payment of the arbitrator's fees, without more, is not a sufficient reason to invalidate the arbitration agreement."); *Gill v. Jim Walters Home of Louisiana, Inc.*, 187 F. Supp. 2d 618, 623 (W.D. La. 2002) (same) (citing *Williams v. Cigna Fin. Advisors*, 197 F.3d 752, 764-65 (5th Cir. 1999)).

arbitration will be conducted.") (internal citations and quotations omitted); *Davis v. Prudential Secs., Inc.*, 59 F.3d 1186, 1193 n.6 (11th Cir. 1995) ("[P]arties wishing to avoid the imposition of punitive damages in arbitration may simply expressly exclude punitive damages in the arbitration agreement."); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1387 n.16 (11th Cir. 1988) ("Of course [sic], the [Federal] Arbitration Act would not override a clear provision in a contract prohibiting arbitrators from awarding punitive damages.")

Plaintiffs' reliance on *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), in support of their claim that an arbitration provision may not preclude the award of certain types of damages, is misplaced.  It is true, as Plaintiffs contend, that *Mitsubishi* declared that an agreement to arbitrate a statutory claim does not forego the substantive rights afforded by the statute.  *Id.* at 628.  However, immediately following this declaration, the Court stated, "[w]e must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history.  Having made the bargain to arbitrate, the party should be held to it *unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.*"  *Id.* (emphasis added).  Plaintiffs here have made no showing, by reference to text or legislative history, that Congress intended to preclude the waiver of judicial remedies at issue here.  Having made the bargain to arbitrate all claims arising out of their relationship with Defendants, Plaintiffs will be held to their agreement.

### C.    *Arbitrability of Claims*

Plaintiffs argue that if they are compelled to submit their claims to arbitration, only those claims arising during the contract period are arbitrable. Defendants do not deny that only those claims arising during the contract period are subject to arbitration, but rather insist that this particular argument does not have any relevance to their claims.  We agree.

Plaintiffs executed their agreements with Defendants between September 1998 and January 2001.  Plaintiffs filed their Complaint in February of 2005. Accordingly, all claims arising subsequent to the individual Plaintiff's date of signing the Agreements are subject to arbitration.  Conversely, all claims arising prior to that date are not subject to arbitration, as they arose before the applicable contract period.  Therefore, the only claims not subject to arbitration are those that arose prior to the respective dates of signing and for which the statute of limitations was not yet expired as of the time of filing the Complaint.[11]  That the arbitration provisions do not apply retroactively is of no consequence, for Plaintiffs have not identified a single claim that arose prior to their respective signing dates and for which the statute of limitations was not yet expired as of February 2005.

### D.    *Non-Signatories*

Plaintiffs assert that the Physician's Group and Independent Practice Associations ("IPAs") cannot be bound by the arbitration provisions because they are not signatories to the Physician Agreements. While it is ordinarily true that non-signatories to an arbitration agreement will not be bound to it, courts have

---

[11]    Plaintiffs filed their Complaint on February 17, 2005.

regularly recognized that claims arising out of enforceable arbitration agreements, whether brought by the signatory doctors or a group that represents them, must be arbitrated. *See, e.g., AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986); *see also* In re Managed Care Litig., 2003 WL 22410373, at *10 (determining that claims asserted by medical associations on behalf of their member-doctors which are subject to enforceable arbitration agreements must be submitted to arbitration). Though not binding on this Court, the Connecticut Superior Court, in addressing a similar issue, persuasively reasoned that:

> It is illogical to assume that the representative or agent of a party that has agreed to arbitration may enforce that agreement but not itself be subject to the duty to arbitrate…To hold otherwise would be to defeat the enforceability of arbitration agreements, as a party that had agreed to arbitrate could sidestep that obligation merely by having a surrogate, whether an association or an assignee, bring the suit on its behalf, depriving the other party to the contract of the benefit of the provisions of the contract.

*Conn. State Med. Soc'y v. Oxford Health Plans (CT), Inc.*, No. X01CV0165664S, 2001 WL 1681903, at *6 (Conn. Super. Ct. Dec. 13, 2001); *cf. Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90 (D.C. Cir. 1986) (requiring associational plaintiffs to exhaust administrative remedies under designated system, as individual member plaintiffs would have been required, before seeking remedy in court).

The Physician's Groups and IPAs are also bound to the arbitration agreements through common law principles of agency and contract. *See, e.g., World Rentals and Sales, LLC v. Volve Constr. Equip. Rents, Inc.*, No. 06-16352, 2008 WL 466127, at *3 (11th Cir. Feb. 22, 2008) ("[C]ommon law principles of contract and

agency law allow a signatory . . . to bind a non-signatory . . . to an arbitration agreement under any of five distinct theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel.") (internal citations and quotations omitted); *Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC*, No. 06-22347-CIV, 2007 WL 601992, at *7 (S.D. Fla. Feb. 21, 2007) (same); *Foster v. Sears, Roebuck and Co.*, 837 F. Supp. 1006, 1008 (W.D. Mo. 1993) ("[N]onsignatories to a contract containing an arbitration clause may be deemed parties thereto, through ordinary contract principles, for purposes of determining whether they should be compelled to arbitrate a dispute.") (citations omitted). The claims raised by the Physician's Groups and the IPAs are based in the Physician Agreements.   Though themselves non-signatories, they have clearly sought to benefit from the Agreements by joining the instant action and previously collecting payments under the Agreements.   Having sought that remedy under the Agreements, the Physician Groups and IPAs have assumed the obligation to resolve the dispute through the contracted arbitration procedure. *See, e.g., id.* ("[A] party cannot have it both ways; it cannot rely on the contract when it works to its advantage and then repute it when it works to its disadvantage.").

   **E.**   **_Dismissal or Stay of Proceedings_**

   Defendants seek to dismiss or, in the alternative, stay the proceedings pending arbitration.   Plaintiffs, for their part, argue that a stay of their non-arbitrable claims is inappropriate.   In support of their argument, Plaintiffs cite to a number of authorities that support the proposition that non-arbitrable claims may be bifurcated from arbitrable ones so as to allow proceedings in different fora to

continue uninterrupted.  *See* Plaintiffs' Memorandum in Opposition at 15 [D.E. 60] (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (courts have a duty to "rigorously enforce an agreement to arbitrate, even if the result is piecemeal litigation"); *Coors Brewing Co. v. Molsen Breweries*, 51 F. 3d 1511, 1517 (10th Cir. 1995) ("Coors may litigate antitrust claims not related to the licensing agreement just as anyone else with standing may."); *Coffman v. Provost * Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 729-30 (E.D. Tex. 2001) ("[A]rgument that the court should not bifurcate [non-arbitrable] claims because it would result in inefficient adjudication in different forums is unavailing.")).

This argument, however, is inconsequential.  Plaintiffs have not shown, or even argued, that any of their claims fall outside the scope of the arbitration agreements.  As mentioned above, the Agreements are very broad, and require that "any and all disputes . . . not involv[ing] an allegation of medical malpractice or professional negligence of a party . . . shall be submitted to binding arbitration . . . ." *See* Participation Agreement at 24.  As Plaintiffs have no non-arbitrable claims or theories of recovery, there are no non-arbitrable claims to bifurcate, and all proceedings against the moving Defendants should therefore, at a minimum, be stayed.

In response to Defendants' primary requested relief, a dismissal of the Plaintiffs' claims against them, Plaintiffs respond in opposition that a dismissal of those claims that are arbitrable is inconsistent with the Federal Arbitration Act ("FAA").  The FAA states, in pertinent part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Plaintiffs conclude that dismissing the proceedings would inhibit judicial economy, as any award granted through arbitration would have to be confirmed by a court, in accordance with Section 9 of the FAA, in order to form a binding judgment enforceable by law.  9 U.S.C. § 9.  A dismissal, Plaintiffs argue, would simply require this (or some other) court to re-open the case.

Defendants reply that judicial economy is best served by dismissing the claims, for they may voluntarily pay any award that is granted through arbitration; and in any event, confirmation of an arbitration award would require the drafting of an entirely new complaint.  This does not persuade us.  This Court is intimately familiar with the case at bar.  Although it is possible that the role this Court is to play in this dispute, pending arbitration, may be over, there is no reason to potentially start the process anew.  As to Defendants' argument that a dismissal would be entirely consistent with the FAA, despite the support they provide,[12] the

---

[12]      In *Samadi v. MBNA Am. Bank, N.A.*, 178 Fed Appx. 863, 866 (11th Cir. 2006), that panel decision did in fact affirm a District Court's dismissal of a case because all of the Plaintiff's claims were subject to arbitration.  The court did not, however, reconcile that outcome with the text of Section 3 of the FAA.  We can only surmise that a dismissal was appropriate, perhaps, because neither of the parties applied for a stay or challenged the dismissal remedy itself.

language of FAA Section 3 is clear and unambiguous: this Court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had."   Plaintiffs request that this "action [be left] open pending a final arbitrator's award so the award can be confirmed . . . ."   *See* Plaintiffs' Memorandum in Opposition at 17.

Accordingly, we find that an outright dismissal is not warranted; instead, a stay of the proceedings pending arbitration should be entered.

## III.   CONCLUSION

Based on the foregoing, the undersigned Judge recommends that Defendants' Motion to Compel Arbitration [D.E. 49] be **GRANTED** and that all of Plaintiffs' claims against Blue Cross and Blue Shield of Kansas City and Good Health HMO, Inc. be **STAYED** pending the final outcome of arbitration.

Pursuant to Local Magistrate Rule 4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.   Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.   *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 4th day of March, 2009.

EDWIN G. TORRES
United States Magistrate Judge